E-FILED
Wednesday, 22 January, 2014  11:17:53 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

_____

| | | |
|---|---|---|
| **TROY FONVILLE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. 12-CV-2161** |
| | ) | |
| **KEITH ANGLIN, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION

On June 19, 2012, Petitioner, Troy Fonville, submitted a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#1) to this court. On July 16, 2012, Petitioner paid the $5.00 filing fee and Petitioner's Petition Under § 2254 (#1) was therefore considered filed in this court. On October 23, 2012, Respondent filed his Answer (#7) to the Petition and attached exhibits (#8), which included the complete state court record. On January 22, 2013, Petitioner filed a Reply (#11).

This court has carefully reviewed the arguments of the parties and the lengthy exhibits filed in this case. Following this careful and thorough review, Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#1) is DENIED.

## FACTS

On February 5, 2008, following a stipulated bench trial, Petitioner was found guilty of unlawful possession with intent to deliver more than 5,000 grams of cannabis. The state agreed that, if Petitioner proceeded by way of a stipulated bench trial and the court found Petitioner guilty, there would be a cap on Petitioner's sentence of 20 years' incarceration in

the Illinois Department of Corrections.  On March 17, 2008, the court sentenced Petitioner to a term of 20 years in prison.  Petitioner was also ordered to pay $56,000, consisting of a $3,000 assessment and a $53,000 "street value" fine.  By statue, Petitioner's sentence is to be followed by a three-year term of mandatory supervised release (MSR).

Petitioner appealed and raised two issues: that the trial court erred in denying his motion to suppress and that the state did not meet its burden to show that he was guilty beyond a reasonable doubt.  On January 13, 2009, the Appellate Court, Fourth District, affirmed Petitioner's conviction in a lengthy and thorough order.  *People v. Fonville*, Case No. 4-08-0242 (unpublished order).  The appellate court recounted the evidence presented at the hearing on the motion to suppress.  At the hearing, testimony was presented that Champaign police officers Jeff Creel, Jack Armstrong and Jaime Bowersock responded to a 9-1-1 hang-up call.  They arrived at the residence from which the call was made on August 6, 2006, at approximately 2:13 a.m.  As the officers approached the residence, they could hear yelling inside and Bowersock heard what sounded like a physical altercation.  Bowersock looked into the window of the residence and saw young children inside.  Creel knocked on the front door, identified himself as a police officer and told the children to open the door.  A young girl about 12 years old opened the door for him.  Creel proceeded down the hallway and observed five children, ranging in age from approximately 2 to 13, huddled in the southwest bedroom.  The children said they were okay, but the officer saw what looked like a spot of fresh blood on the middle of the shirt worn by a male child.  Bowersock and Armstrong also entered the home and described the children as visibly upset and confused.

2

The officers stated that they did not leave "because they wanted to ensure that no one was injured or fighting, in need of medical care, or being restrained from requesting assistance." *Fonville*, Case No. 4-08-0242, at p. 4.

Bowersock went to check the northwest bedroom. The door to this bedroom was closed but off its hinges. Bowersock moved the door and noticed an overwhelming odor of raw cannabis. He illuminated the room with his flashlight and saw cannabis in a plastic baggie on the dresser, a box with a photograph of a digital scale, and packaging on the floor. Creel testified that the children said the northwest bedroom was their parents' bedroom and the officers could not go in there. Creel also testified that there was an overwhelming odor of cannabis in the bedroom and that he observed what appeared to be cannabis in a baggie on the dresser and packaging on the floor. When the officers exited the northwest bedroom, Petitioner and Summer Butts entered the home. They yelled for the officers to get out of their house and tried to get down the hallway. Bowersock stated that he believed they wanted to get to the northwest bedroom, which Petitioner identified as his bedroom. Bowersock testified that Petitioner said, "[Y]ou have no business in my room." *Fonville*, Case No. 4-08-0242, at pp. 6-7. When Petitioner tried to push past the officers, he was detained and placed in handcuffs. *Fonville*, Case No. 4-08-0242, at p. 7. At some point, Petitioner and Butts were removed from the home, and Armstrong transported Petitioner to jail. *Fonville*, Case No. 4-08-0242, at p. 7.

Sergeant David I. Griffet testified that Bowersock called him and asked him to come to the residence. Griffet arrived at 2:25 a.m. and Bowersock briefed him on why they were

3

there as well as his observations in the northwest bedroom.  *Fonville*, Case No. 4-08-0242, at p. 7.  Griffet then went to the northwest bedroom and made his own observations.  Griffet told the other officers to "hold the house" while he obtained a search warrant.  *Fonville*, Case No. 4-08-0242, at p. 7.  Griffet signed a complaint and affidavit for search warrant and included the observations made by Bowersock and Creel when they opened the door to the northwest bedroom.  *Fonville*, Case No. 4-08-0242, at p. 8.  A search warrant was issued at 4 a.m.  Griffet subsequently assisted in the search of the northwest bedroom.  The officers found: (1) a large wrapper containing cannabis at the foot of the bed; (2) a duffle bag with some other wrapping similar to the wrapped package found on the floor; (3) two other bags of cannabis near the dresser; (4) in a bottom drawer of a dresser, a shoebox with nine bundles of currency; (5) a large packing scale on the floor; and (6) a .38 caliber Derringer handgun.  *Fonville*, Case No. 4-08-0242, at p. 9.

After hearing the evidence and argument from the parties, the trial court denied the motion to suppress.  The court found the initial entry into the home was valid because of exigent circumstances, specifically finding that "the officers were confronted with a situation that 'would cause any reasonable person to believe that there was a problem and they would have been derelict in their duties had they not followed up on that.'" *Fonville*, Case No. 4-08-0242, at pp. 9-10.  The court found the officers were justified in making a protective sweep of each room and maintaining their presence until the safety of the children could be ensured and the situation assessed.  The court found, however, that Griffet was not acting as backup or otherwise assisting in carrying out the original purpose of the entry when he arrived.  The

4

court therefore found that Griffet's entry into the northwest bedroom for the purpose of getting a search warrant constituted an improper second entry. However, the court excised from the search warrant affidavit Griffet's independent observations and reviewed the remaining assertions in the affidavit for probable cause. The trial court "concluded that probable cause for the search warrant existed given the odor in the northwest bedroom and the packaging material found by Officer Bowersock" and found "Officer Bowersock's observations sufficiently distinguishable to purge the evidence of any taint from Sergeant Griffet's entry and discoveries." *Fonville*, Case No. 4-08-0242, at p. 10. The trial court also determined that the seizure of the home while waiting for the search warrant was temporary, supported by probable cause, and had as its purposes prevention of the loss of evidence and officer safety. *Fonville*, Case No. 4-08-0242, at pp. 10-11.

The appellate court rejected Petitioner's argument that the trial court erred by denying his motion to suppress. The court stated that, "[g]iven these facts, the trial court did not err by concluding that the officers had a reasonable belief that someone inside the house might be in danger or in need of immediate assistance and that the initial entry was proper." *Fonville*, Case No. 4-08-0242, at p. 17. The court concluded that "exigent circumstances justified the officers' warrantless entry into the home" and "also justified the officers' limited search of the home to determine whether anyone needed assistance or whether any adults were present." *Fonville*, Case No. 4-08-0242, at p. 18. The court noted that, when the officers entered the northwest bedroom, they noticed a strong odor of cannabis and Bowersock saw, in plain view, a baggie of cannabis on the dresser and packaging material

on the floor.  *Fonville*, Case No. 4-08-0242, at p. 20.  The appellate court also agreed with

the trial court that the officers reasonably secured the home while the search warrant was

obtained.  *Fonville*, Case No. 4-08-0242, at pp. 22-23.

In addition, the appellate court rejected Petitioner's argument that the evidence must

be suppressed because the search warrant, which resulted in seizure of the cannabis, could

not cure Griffet's unlawful entry and search.  Petitioner contended that the complaint,

affidavit, and subsequently issued warrant were dependent upon and a product of the

unlawful entry and search of the premises by Griffet.  The appellate court noted that,

although the trial court did not specifically articulate the doctrine in its ruling, the court

apparently applied the independent-source doctrine in its analysis of the second entry into

the home.   The appellate court stated:

> Under the independent-source doctrine, this court must determine
>
> whether the officers' discovery of the 20-pound bundle of cannabis
>
> pursuant to the search warrant was genuinely independent of the earlier,
>
> allegedly tainted discovery of the cannabis by Sergeant Griffet.  Whether
>
> a search warrant was an independent source of illegally obtained
>
> information and tangible evidence requires an examination of whether
>
> (1) the officer's decision to seek the warrant was prompted by unlawful
>
> entry or (2) the information unlawfully obtained was presented to the
>
> judge issuing the warrant and affected his decision to issue the warrant.
>
> [*See Murray v. United States*, 487 U.S. 533, 542 (1988).]

*Fonville*, Case No. 4-08-0242, at pp. 26-27. The appellate court concluded that the trial court's conclusion that the decision to obtain a search warrant had in fact been made before Griffet's illegal entry and additional observations was supported by the evidence so the first prong of the *Murray* test was satisfied. *Fonville*, Case No. 4-08-0242, at p. 28. The appellate court then discussed the second prong of the *Murray* test. It stated:

> When determining whether the information obtained illegally affected the judge's decision to issue the search warrant, the court excises the illegally obtained information from the application for the search warrant and determines whether the remaining information is legally sufficient to support probable cause. [Citations omitted.]

> The trial court applied that approach here. The court excised the information that it believed to be the illegally obtained information from the warrant application and concluded the remaining information supported probable cause.

*Fonville*, Case No. 4-08-0242, at pp. 28-29. The appellate court agreed with the trial court that the remaining information was sufficient to demonstrate probable cause that the area to be searched contained evidence of a crime and concluded that, consequently, the trial court did not err by denying Petitioner's motion to suppress. *Fonville*, Case No. 4-08-0242, at pp. 30-31.

The appellate court also rejected Petitioner's argument that the evidence was insufficient to prove him guilty beyond a reasonable doubt. The court stated that the

7

"circumstantial evidence that the cannabis was found in [Petitioner's] bedroom in his own residence provided a basis from which the trial court could reasonably conclude that [Petitioner] had knowledge of the presence of the controlled substance and that the substance was in the immediate possession or control of [Petitioner]." *Fonville*, Case No. 4-08-0242, at p. 35.  The court concluded that "[a]fter viewing the evidence in the light most favorable to the prosecution, this court concludes that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Fonville*, Case No. 4-08-0242, at p. 38.

Petitioner filed a petition for leave to appeal (PLA) with the Illinois Supreme Court. The PLA was denied on May 28, 2009.

In February 2010, Petitioner filed a petition for post-conviction relief with the circuit court of Champaign County, raising numerous issues.  The trial court summarily dismissed the post-conviction petition and Petitioner appealed.  The Appellate Court, Fourth District, affirmed on October 5, 2011.  *People v. Fonville*, Case No. 4-10-0373 (unpublished order). In doing so, the appellate court found patently without merit Petitioner's claim that the three-year MSR term and fines of $56,000 imposed as part of his sentence violated the 20-year sentence cap agreed upon by the parties.  The court concluded that "the record shows [Petitioner] was informed by the trial court that any sentence to the Illinois Department of Corrections would be followed by a three-year MSR term" and "would be accompanied by fines of up to $200,000." *Fonville*, Case No. 4-10-0373, at p.6.  The court then stated that Petitioner's "claims on these issues are contradicted by the record." *Fonville*, Case No. 4-10-

0373, at p.6.

The appellate court also found Petitioner's claims of ineffective assistance of counsel patently without merit. The court stated that "a petition alleging ineffective assistance of counsel will survive summary dismissal if it is arguable (1) counsel's performance fell below an objective standard of reasonableness, and (2) the defendant was prejudiced." *Fonville*, Case No. 4-10-0373, at p. 7. The court found Petitioner's claim that his counsel was ineffective for failing to have the indictment dismissed was barred by res judicata and inherently frivolous. *Fonville*, Case No. 4-10-0373, at p. 6. The court also found frivolous Petitioner's claim that his counsel failed to inform him of the MSR term, again noting that "the record clearly shows [Petitioner] was informed of the three-year MSR term in open court and acknowledged that he understood the terms." *Fonville*, Case No. 4-10-0373, at p. 7. The appellate court also concluded that Petitioner was not prejudiced by defense counsel's alleged ineffectiveness regarding the street value fine because the $53,000 street value fine imposed "was a fair estimate of the street value of the cannabis seized." *Fonville*, Case No. 4-10-0373, at p. 8.

Petitioner filed a PLA which was denied on January 25, 2012.

## ANALYSIS

Petitioner's Petition (#1) was filed in this court on June 19, 2012. Petitioner listed four grounds for relief. Petitioner alleged: (1) his motion to suppress should have been granted where police acted without probable cause in searching first, then seeking a warrant based on the fruit of the illegal search; (2) the state failed to prove beyond a reasonable doubt

9

that he possessed with the intent to deliver more than 5,000 grams of cannabis; (3) he did not receive effective assistance of counsel where counsel (a) failed to move to dismiss the indictment after evidence adduced at the hearing on the motion to suppress revealed the state presented deceptive and inaccurate testimony to the grand jury, (b) failed to inform him that a three-year MSR term would be attached to any sentence agreement negotiated with the state and did not inform him regarding the statutory provision requiring imposition of a $3,000 assessment as well as a "street value" fine, and (c) failed to object at sentencing or in a motion for new trial that the state failed to present any evidence to support the $53,000 street value fine imposed; and (4) the addition of three years of MSR unfairly breached the 20 year "cap" agreement he negotiated with the state so his sentence must be reduced to 17 years.

On October 23, 2012, Respondent filed his Answer (#7) and attached the state court record (#8). Respondent argued that Petitioner's first and fourth issues are not cognizable on federal habeas review. Respondent also argued that Petitioner is not entitled to relief as to issues two and three because the state appellate court's rejection of these issues was not contrary to, or an unreasonable application of, clearly established federal law. On January 22, 2013, Petitioner filed a Reply (#11).

Because Petitioner filed his habeas petition after April 24, 1996, the petition is reviewed pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA "imposes a highly deferential standard for reviewing claims of legal error by the state courts: A writ of habeas corpus may

issue only if the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by'" the United States Supreme Court. *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013), *quoting* 28 U.S.C. § 2254(d)(1).

## GROUND ONE - MOTION TO SUPPRESS

Petitioner has challenged the ruling on his motion to suppress and argued that the search warrant was issued based upon Griffet's observations during his illegal search so that the evidence seized during the execution of the search warrant must be suppressed.  In his Answer, Respondent argued that this ground is not cognizable on federal habeas review because, under *Stone v. Powell*, 428 U.S. 465, 481-82 (1976), Petitioner cannot obtain habeas relief for a state court's denial of a motion to suppress on Fourth Amendment grounds.  This court agrees.

In *Stone*, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 481-82.  When the state has provided an opportunity for "full and fair litigation of a Fourth Amendment claim," such a claim is not cognizable on federal habeas review. *Stone*, 428 U.S. at 494.  Therefore, *Stone* "bars a federal habeas court from reaching the merits of a petitioner's Fourth Amendment claim so long as the state court granted him a full and fair hearing on the claim."  *Monroe v. Davis*, 712 F.3d 1106, 1112-13 (7th Cir. 2013), *citing Stone*, 428 U.S. at 494; *see also Watson v. Hulick*, 481 F.3d 537, 541 (7th Cir. 2007).

11

A "full and fair" hearing occurs when the habeas petitioner was allowed to present his case in a proceeding that was not a "sham." *Monroe*, 712 F.3d at 1114; *see also Cabrera v. Hinsley*, 324 F.3d 527, 531-32 (7th Cir. 2003).

In his Reply (#11), Petitioner has argued that *Stone* does not bar his claim because the underlying issue "has never truly been properly analyzed based on controlling Supreme Court precedent." Petitioner has argued, at length, regarding the errors he believes the appellate court made in ruling on his motion to suppress.

However, in this case, an evidentiary hearing was held in the trial court regarding Petitioner's motion to suppress at which numerous witnesses testified. The trial court thoroughly discussed the evidence presented, the case law cited by the parties and the basis for the denial of the motion. On appeal, the appellate court provided a thorough and lengthy analysis of its reasons for affirming the trial court's decision. The appellate court determined that Griffet's illegal search did not require suppression of the evidence based upon a careful and thoughtful analysis of *Murray v. United States*, 487 U.S. 533, 542 (1988) and the independent source doctrine. It is clear that Petitioner does not agree with this analysis. However, this court concludes, without hesitation, that Petitioner "received a full and fair hearing on the merits of his Fourth Amendment claim in the Illinois courts" because "[b]oth the trial court and the Illinois Appellate Court entertained and reached the merits of his claim." *See Monroe*, 712 F.3d at 1116. Therefore, *Stone* precludes this court from reaching the merits of Petitioner's Fourth Amendment claim. *See Monroe*, 712 F.3d at 1116.

GROUND TWO - SUFFICIENCY OF THE EVIDENCE

12

Petitioner next argued that the state failed to prove him guilty beyond a reasonable doubt.  The state appellate court rejected this argument on direct appeal, so Petitioner must show that the state appellate court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Burt*, 134 S. Ct. at 15.  The Supreme Court has held that, in reviewing a sufficiency of the evidence claim, the test "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  The state appellate court applied this test in considering Petitioner's challenge to the sufficiency of the evidence. *See Fonville*, Case No. 4-08-0242, at p. 38.  This court agrees with Respondent that the appellate court did not unreasonably apply *Jackson* to the facts before it.  Evidence was presented that Petitioner lived in the house, and that his bedroom was the bedroom where the police found the large quantity of cannabis that produced a strong odor immediately recognizable to the officers. The evidence also showed that Petitioner's fingerprint was found on packaging material in the bedroom, and much of the cannabis in the bedroom was packaged.  This court agrees that, in light of this evidence, the appellate court's rejection of Petitioner's sufficiency of the evidence claim was not an unreasonable application of *Jackson*.

### GROUND THREE - INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner has also claimed that he was denied the effective assistance of counsel.  To prevail on this claim, Petitioner was required to show both that his attorney's performance

13

fell below an objective standard of reasonableness and that there was a reasonable probability that the outcome of the relevant proceedings would have been different but for his counsel's failings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Monroe*, 712 F.3d at 1116. The Illinois Appellate Court set out the applicable standard and affirmed the summary dismissal of Petitioner's claims of ineffective assistance of counsel. Because the state appellate court considered and rejected Petitioner's ineffectiveness claims on the merits, Petitioner must show that the court's resolution constituted an unreasonable application of *Strickland*.

Petitioner's first claim is that his counsel was ineffective for failing to move to dismiss the indictment after the suppression hearing testimony showed that Griffet allegedly gave false testimony to the grand jury. Respondent has pointed out that Petitioner raised this claim in his post-conviction petition but did not include it in his post-conviction appeal. The appellate court, however, inexplicably addressed the argument and found it was "res judicata." *Fonville*, Case No. 4-10-0373, at p.6. This court agrees with Respondent that, in any case, this claim is entirely without merit and can be disposed of on that basis. To prevail on a motion to dismiss the indictment on the ground that it was based on perjured testimony, trial counsel would have to demonstrate that (1) Petitioner suffered a denial of due process when the state presented Griffet's perjured testimony to the grand jury; and (2) Petitioner was prejudiced by the due process denial in that, without the perjured testimony, he would not have been indicted. *See People v. Oliver*, 859 N.E.2d 38, 43 (Ill. App. Ct. 2006).

After careful consideration, this court concludes that it is a stretch to call Griffet's

14

grand jury testimony "perjured."  Although Petitioner claims that Griffet's testimony was misleading because he testified regarding the initial entry into the residence as if he was there, he did later state that Creel, Bowersock and Armstrong entered the residence. Petitioner is correct that there are some discrepancies between Griffet's grand jury testimony and the testimony at the hearing on the motion to dismiss regarding what was seen during the initial entry into the northwest bedroom.  However, this court agrees with Respondent that Griffet's grand jury testimony, and the officers' suppression hearing testimony, was consistent on the critical points: the officers entered the home, discovered cannabis in a room, obtained a warrant, and, pursuant to the warrant, discovered several pounds of cannabis in Petitioner's bedroom.  This court therefore agrees with Respondent that Petitioner's counsel could not have met either prong of the applicable test.  Accordingly, Petitioner failed to show that his counsel was ineffective for failing to move to dismiss the indictment, or that he was prejudiced by that omission.  "Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel."  *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

The state appellate court considered Petitioner's other claims of ineffective assistance of counsel and found that they were properly dismissed.  This court concludes that Petitioner cannot show that the court's resolution constituted an unreasonable application of *Strickland*. The appellate court reasonably determined that Petitioner's claim that his counsel was ineffective for failing to advise him that his sentence could include MSR and fines was contradicted by the record.  The record clearly shows that the trial court expressly

admonished Petitioner that, if convicted, his sentence would include a three-year MSR term and he could be fined up to $200,000.  Petitioner stated that he understood the possible penalties.  Petitioner's counsel could not be ineffective for failing to advise Petitioner of the penalties that Petitioner acknowledged in his counsel's presence that he understood.  Further, the appellate court reasonably concluded that Petitioner's counsel was not ineffective for failing to object to the street value fine imposed of $53,000.   As the appellate court explained, grand jury testimony supported this finding of the value of the cannabis recovered so that the $53,000 fine represented a fair assessment of the value of the cannabis.  *Fonville*, Case No. 4-10-0373, at p.7-8.  Consequently, counsel was not ineffective for failing to challenge the amount of the fine.

GROUND FOUR - MSR TERM

Petitioner's last claim is that the addition of a three-year MSR term breached the 20 year "cap" agreement he negotiated with the state so that his sentence must be reduced to 17 years pursuant to *Santobello v. New York*, 404 U.S. 257 (1971).  The state appellate court concluded that this claim was contradicted by the record and, therefore, patently without merit.  *Fonville*, Case No. 4-10-0373, at p.6.  In his Answer, Respondent argued that this claim is not cognizable on habeas review because it does not allege a denial of a clearly established right under the federal constitution.  Respondent pointed out that there is no Supreme Court precedent for the proposition that a defendant must be advised of a term of MSR at the time of his guilty plea, citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006).  Respondent also argued that Petitioner's citation to *Santobello* does not save his

16

claim because *Santobello* did not establish a right to exclusion of an MSR term where a plea agreement does not specifically address MSR.   In his Reply, Petitioner conceded that no Supreme Court cases currently exist establishing a right to be informed of MSR.  However, Petitioner argued that, under *Santobello*, he is entitled to a reduction of his 20-year sentence to a term of 17 years because the 20-year sentence imposed violated his agreement with the state.  This court concludes that Petitioner's argument is entirely without merit.

Petitioner's claim fails because he has offered nothing suggesting that the state promised that the MSR term would not attach to the end of his sentence by operation of statute.  *See Villanueva v. Anglin*, 719 F.3d 769, 777-78 (7th Cir. 2013).  In fact, the record shows that the agreement was that there would be a cap on Petitioner's sentence of 20 years' incarceration *in the Illinois Department of Corrections*.  Petitioner was sentenced in accordance with this agreement, to a term of 20 years in the IDOC.  Therefore, to have a claim under *Santobello*, Petitioner must prove that the state also promised that the MSR term would not attach.  *See Villanueva*, 719 F.3d at 778.  Petitioner has not even argued that this was the case, and certainly has presented no evidence of such a promise.  The record shows, in fact, that Petitioner stated that no additional promises were made to him in return for his offer to proceed by way of a stipulated bench trial.  Therefore, Petitioner's *Santobello* claim fails because he cannot show the agreement precluded MSR.  *See Villanueva*, 719 F.3d at 779.  The appellate court correctly concluded that Petitioner's claim was contradicted by the record, and this court accordingly finds that the appellate court's decision was not an unreasonable application of clearly established federal law as determined by the Supreme

17

Court.

CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final judgment adverse to a habeas petitioner.  A petitioner may appeal a district court's denial of a writ of habeas corpus only when the petitioner has been issued a certificate of appealability (COA).  28 U.S.C. § 2253(c)(1).  To obtain a COA, a habeas petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

This court concludes that Petitioner has not made a substantial showing of the denial of any constitutional right.  Therefore, this court concludes that a COA is unwarranted.

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#1) is DENIED.

(2) A certificate of appealability is DENIED.

(3) This case is terminated.

ENTERED this 22nd day of January, 2014

s/COLIN S. BRUCE
U.S. DISTRICT JUDGE